UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| PURITY BAKERY BUILDING LIMITED PARTNERSHIP, | Case No. 11-CV-0094 (PJS/AJB) |
| Plaintiff, | |
| v. | ORDER |
| PENN-STAR INSURANCE COMPANY, | |
| Defendant. | |

Brendan R. Tupa, UDOIBOK, DAVIS & TUPA, PLLP, for plaintiff.

Tony R. Krall, Lindsy J. Rohlf, and Nathan A. Lampi, HANSON, LULIC & KRALL, LLC, for defendant.

This matter is before the Court on the motion of defendant Penn-Star Insurance Company ("Penn-Star") for a temporary restraining order ("TRO") enjoining attempts by plaintiff Purity Bakery Building Limited Partnership ("Purity Bakery") to collect a default judgment in the amount of $806,917.80 that was entered against Penn-Star by the Clerk of this Court on February 23, 2011. For the following reasons, the Court grants Penn-Star's motion.

I. BACKGROUND

Penn-Star insured a building owned by Purity Bakery. The building was damaged during a storm in August 2009. Purity Bakery says that the damage to the building was severe and was caused by the weather, and thus Penn-Star must pay to repair the damage. Penn-Star says that the damage to the building was minor and was caused by old age and deterioration, and thus Penn-Star does not have to pay to repair the damage. The parties have been arguing over this issue for a long time, and the attorneys for the parties have been dealing with each other on an ongoing basis.

Purity Bakery decided to seek judicial resolution of this dispute. Purity Bakery filed the complaint in this action on January 12, 2011, and attempted to serve the summons and complaint on Penn-Star by handing copies to a receptionist employed by the Minnesota Commissioner of Commerce on January 18, 2011. The parties dispute whether that service was effective. In any event, Penn-Star claims that the Commissioner failed to notify it that it had been sued. Thus, Penn-Star did not file an answer to the complaint.

That answer was due on February 8, 2011. When no answer was filed, Purity Bakery's attorney — apparently without contacting the attorneys for Penn-Star with whom he had long been dealing — rushed into Court on February 10, 2011 and sought entry of a default judgment from the Clerk by filing a document entitled "Affidavit of Default Identification with Request for Entry of Default Judgment by the Clerk per Rule 55(b)(1)." Purity Bakery's attorney did not supply a copy of that affidavit to Penn-Star nor in any way notify Penn-Star or its attorneys that he was asking a federal court to enter judgment in the amount of $821,709.21 against Penn-Star. In response to the affidavit, the Clerk entered a default judgment against Penn-Star in the amount of $806,917.80. (The Clerk apparently refused to include in the judgment attorney's fees sought by Purity Bakery.) Purity Bakery then set out to collect its judgment.

According to Penn-Star, it did not become aware of either the fact that it had been sued or the fact that a default judgment had been entered against it until March 29, 2011. The following day, Penn-Star filed two motions: a motion to vacate the default judgment, and a motion for a TRO enjoining Purity Bakery from attempting to collect the default judgment. Both motions were served on Purity Bakery.

In response to the motions, the Court asked the attorney for Purity Bakery if his client would be willing to forego collecting the default judgment for a few days to give the Court a chance to rule on Penn-Star's motions. Purity Bakery refused to accommodate the Court. The Court then set an expedited briefing schedule and scheduled a hearing on Penn-Star's motions for April 13, 2011 — just two weeks after Penn-Star filed its TRO motion. The Court did not issue an order enjoining Purity Bakery from collecting the judgment in advance of the hearing, assuming that, with the case put on expedited schedule and a hearing scheduled for April 13, Purity Bakery would not be so aggressive as to attempt to collect the judgment in the meantime.

The Court underestimated Purity Bakery's aggressiveness. Despite knowing that a hearing on the motions was scheduled for April 13, and despite having been asked by the Court to voluntarily refrain from collecting the judgment for a few days to give the Court an opportunity to rule on the motions, Purity Bakery served a garnishment summons on Penn-Star's bank on April 6, 2011. The bank attached over $800,000 in the account of Penn-Star, making those funds unavailable for withdrawal. Fearing that checks that it had written on its account would start to bounce, Penn-Star immediately contacted the Court and asked for an emergency hearing on its motion for a TRO.

On the afternoon of April 6, the Court conducted an emergency telephonic hearing on the TRO motion. At the conclusion of the hearing, the Court issued an oral order granting the TRO. This order reduces that TRO to writing and explains the basis for the Court's action.

II.  ANALYSIS

*A.  Standard of Review*

A court must consider four factors in deciding whether to grant a TRO: (1) the movant's likelihood of success on the merits; (2) the threat of irreparable harm to the movant; (3) the balance between this harm and the injury that granting the injunction will inflict on the other litigants; and (4) the public interest.  *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981).  A TRO is an extraordinary remedy, and the party seeking a TRO bears the burden of establishing the *Dataphase* factors.  *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003).

*B.  Likelihood of Success on the Merits*

Penn-Star will almost certainly succeed in its motion to vacate the default judgment.  Penn-Star's motion is governed by Rule 60(b) of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 55(c).  Under that rule, a court may set aside a judgment based on, inter alia, "mistake, inadvertence, surprise, or excusable neglect," or for "any other reason that justifies relief."  Fed. R. Civ. P. 60(b)(1), (b)(6).  In this case, there are several reasons why the default judgment entered against Penn-Star will likely be vacated, even assuming that Penn-Star was properly served with the summons and complaint (a matter that is in some doubt).

First, it appears that Purity Bakery should not have sought, and that the Clerk should not have entered, default judgment under Rule 55(b)(1).  A clerk-entered default judgment is appropriate only "[i]f the plaintiff's claim is for a sum certain or a sum that can be made certain by computation."  Fed. R. Civ. P. 55(b)(1).  Typically, Rule 55(b)(1) is used to collect a specific amount that was due on a specific date under a specific contract, such as the balance due on a

student loan.  Rule 55(b)(1) is not used when the amount of the judgment cannot be calculated with such certainty.  In this case, Purity Bakery did not seek a "sum certain" from Penn-Star.  To the contrary, it sought to recover an amount of money that was based on a combination of: (1) the highly subjective and vigorously contested opinion of a public adjuster retained by Purity Bakery that Purity Bakery had suffered a loss of $617,790.36 to its building as a result of a covered event (the weather) rather than an noncovered event (deterioration); (2) the apparent decision of Purity Bakery's attorney to simply round up the public adjuster's estimate to $700,000, so as to exhaust the limits of liability under the Penn-Star policy; and (3) interest calculated on this rounded-up "loss" of $700,000.  Each of the constituent parts of Purity Bakery's damages calculation involved a considerable amount of discretion (to put it charitably).  In no sense can Purity Bakery be said to have made a claim for a "sum certain," and thus Purity Bakery almost surely was not authorized to seek — and the Clerk was not authorized to enter — a default judgment pursuant to Rule 55(b)(1).

What Purity Bakery should have done is move for a default judgment from the Court pursuant to Rule 55(b)(2).  The Court then could have — and pursuant to its standard practice, would have — conducted a hearing to satisfy itself that the damages Purity Bakery sought were justified by the evidence.  *See* Fed. R. Civ. P. 55(b)(2)(B) (providing that a court may conduct a hearing to determine the amount of damages that should be awarded pursuant to a default-judgment motion).  The Court would have asked Purity Bakery's counsel if he had notified Penn-Star that he was seeking a default judgment — and, if not, why not.  The Court would also have asked Purity Bakery's counsel what gave him the authority to simply round up his client's

loss to $700,000 and calculate interest based on that rounded-up loss. Almost certainly, the result of that hearing would not have been entry of a judgment against Penn-Star.

Second, default judgment is generally a disfavored manner of resolving disputes, and there is a strong "judicial preference for adjudication on the merits" based on a concern for ensuring "the fundamental fairness of the adjudicatory process." *Oberstar v. F.D.I.C.*, 987 F.2d 494, 504 (8th Cir. 1993). As this Court has explained:

> Default judgments are a necessity, but they "are not favored by the law . . . ." 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2681 (3d ed.1998). A judge is naturally reluctant to enter judgment against a party who has never appeared before the judge and told the judge his or her side of the story. Reflecting this reluctance — and, more importantly, reflecting notions of due process and fundamental fairness — the Civil Rules take pains to protect against the unfair imposition of a default judgment.

*Trustees of the St. Paul Elec. Constr. Indus. Fringe Benefit Funds v. Martens Elec. Co.*, 485 F. Supp. 2d 1063, 1064 (D. Minn. 2007). In circumstances such as these — where the plaintiff rushes into court for a default judgment just two days after the deadline for answering has passed, where the plaintiff gives the defendant no notice (formal or informal) of its request for entry of a default judgment, where the defendant learns about the default judgment for the first time about a month after it is entered, where the defendant immediately asks that the default judgment be vacated, and where the defendant appears to have a substantial defense on the merits — it would be a rare judge who would refuse to vacate the default judgment and allow the case to be decided on the merits.

Third, the considerations that courts typically weigh under Rule 60(b) appear to cut in favor of vacating the default judgment. Courts may consider a variety of factors in determining

whether to grant relief pursuant to Rule 60(b), including the danger of prejudice to the non-moving party, the length of the delay, the impact of the delay on the judicial proceedings, the reason for the delay, and whether the movant acted in good faith. *Feeney v. AT & E, Inc.*, 472 F.3d 560, 563 (8th Cir. 2006). There is absolutely no indication that Penn-Star's failure to file a timely answer was deliberate or done in bad faith (such as for the purpose of securing some type of advantage over Purity Bakery). Penn-Star is, after all, an insurance company. Presumably, it is not a stranger to litigation. It would defy logic for Penn-Star intentionally to fail to answer a complaint filed in connection with a routine coverage dispute and thereby make itself vulnerable to a default judgment exceeding $800,000. Penn-Star says that it did not answer because it did not know that it had been sued — and, based on the record before the Court, there is no reason to doubt Penn-Star's explanation.

As already noted, Purity Bakery filed its application for default judgment just two days after the deadline for Penn-Star's answer had passed, and without extending the courtesy of a phone call to ask about Penn-Star's intentions or to warn Penn-Star that a default judgment would be sought. After the default judgment was entered, Penn-Star acted promptly to vacate that judgment, filing its motion to vacate just one month after the judgment had been entered, and just one day after *learning* that the judgment had been entered. This delay had virtually no effect on the judicial proceedings in this matter.

Finally, based on the parties' statements at the hearing on the TRO, it seems unlikely that Purity Bakery will be unduly prejudiced by an order vacating the default judgment. Purity Bakery essentially argued that it wants its money sooner rather than later, so that it can repair the building that was damaged in August 2009. But the delay in collecting on a default judgment is

not the type of "prejudice" that will cause a court to refuse to vacate a default judgment; if it were, courts would never vacate default judgments, as this type of "prejudice" is present in every case in which a defendant asks that a default judgment be vacated. Purity Bakery cites no other prejudice, which is not surprising, given that this lawsuit remains in its infancy.

For all of these reasons, it is highly likely that the Court will vacate the default judgment.

### C. *Threat of Irreparable Harm to Penn-Star*

The manner in which Purity Bakery has attempted to collect its default judgment presents a threat of irreparable harm to Penn-Star. By attaching $806,917.80 in Penn-Star's bank account, Purity Bakery has ensured that those funds are not available to pay the claims of Penn-Star's insureds or the bills of its creditors. With nearly $1 million in attached funds suddenly and unexpectedly unavailable to Penn-Star, there is a real and imminent danger that its bank account will have insufficient funds to cover all of the checks that it has recently issued, or may soon issue. If Penn-Star's checks to creditors and insureds start to bounce, Penn-Star will suffer irreparable harm to its professional reputation.

### D. *Balance of Harms and the Public Interest*

By contrast, the only apparent harm that Purity Bakery might suffer if the Court grants the TRO is financial: Purity Bakery will have to wait a couple of weeks to collect its judgment. But, as already explained, Purity Bakery's default judgment is almost surely uncollectible. Purity Bakery is obviously not harmed by being blocked from immediately collecting a judgment to which it had no legal entitlement. Moreover, if the Court should deny the motion to vacate that default judgment, it will do so within the next week or two, meaning that the only harm

suffered by Purity Bakery will be a few days' delay in collecting on the judgment — a harm that is trivial and fully compensable with money.

When the Court weighs the harm that Penn-Star will face if the Court denies a TRO against the harm that Purity Bakery will face if the Court issues a TRO, the balance of harms tilts in Penn-Star's favor.

Finally, as already discussed, the public interest strongly favors the adjudication of claims on the merits.

### E.  Conclusion

The Court finds that each of the *Dataphase* factors strongly favors the issuance of a TRO enjoining Purity Bakery from attempting to enforce its default judgment against Penn-Star until the Court resolves Penn-Star's motion to vacate that judgment.  Pursuant to Fed. R. Civ. P. 65(c), the Court will order Penn-Star to post security in the amount of $5,000, which should be more than adequate to compensate Purity Bakery for its loss of use of the judgment during the week or two that the Court will need to decide whether to grant Penn-Star's motion.

ORDER

Based on the foregoing and on all of the files, records, and proceedings herein, and for the reasons stated on the record at the April 6, 2011 hearing, IT IS HEREBY ORDERED THAT:

1. Defendant Penn-Star Insurance Company's motion for a temporary restraining order [Docket No. 26] is GRANTED.

2. Plaintiff Purity Bakery Building Limited Partnership is hereby ENJOINED from enforcing, or attempting to enforce, the default judgment entered in this matter on February 23, 2011.

3. Plaintiff Purity Bakery Building Limited Partnership is further ORDERED to immediately contact all banks to which it has issued garnishment summonses in connection with this matter and to instruct those banks not to attach any funds belonging to defendant, and to release any funds belonging to defendant that have already been attached.

4. Defendant Penn-Star Insurance Company is ORDERED to post security in the amount of $5,000.

Dated: April 7, 2011

s/Patrick J. Schiltz
Patrick J. Schiltz
United States District Judge